FILED
MAR 30 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**Mark Esquibel**
**4768 Soquel Drive # 12**
**Soquel CA 95073**
**Petitioner, Pro Se**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

**280 South 1st Street Room 2112**

**San Jose, CA 95113**

**408-535-5363**

---

**MARK ESQUIBEL,**

C 26 02755
SVK

Plaintiff,

v.

MARIE RIOS; CARLOS MARTINEZ; SANTA CRUZ COUNTY SHERIFF'S DEPARTMENT; HON. KATHERINE HANSEN, in her official capacity only; and DOES 1 through 10, inclusive,

Defendants.

---

*Case No. 5:___-cv-_______*

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

**(42 U.S.C. § 1983)**

**DEMAND FOR JURY TRIAL**

---

**INTRODUCTION**

1. Plaintiff Mark Esquibel brings this action for damages and prospective relief arising from Defendants' independent misconduct, including the misuse of state court process, coordinated law enforcement actions, and ongoing enforcement of a constitutionally infirm restraining order that has separated Plaintiff from his minor daughter for over five years.

2. Plaintiff does not ask this Court to sit as an appellate court over state-court rulings. Plaintiff challenges discrete conduct by Defendants that independently caused constitutional injury — including defective service, fraud in procuring a restraining order, warrantless entry to his home under duress, and ongoing maintenance of a database entry that strips his Second Amendment rights.

3. Plaintiff seeks damages for past harm and prospective relief directed at Defendants' continuing conduct, not an order directing any state court to reverse itself.

4. On April 1, 2021, a five-year Domestic Violence Restraining Order (DVRO) was issued against Plaintiff by default. Plaintiff was never personally served with the application for that order, nor was Donald Schwartz, Plaintiff's attorney of record in the underlying proceedings, served with notice of the March 5, 2021 hearing. *See* Exhibit C (Declaration of Diligence and defective proof of service). The sole factual predicate alleged was that Plaintiff had cancelled an insurance policy — not an act of domestic violence under California Family Code § 6203. Plaintiff has never been found dangerous. Every law enforcement and child protective services investigation conducted over two decades has found the allegations against him unfounded or baseless.

5. Plaintiff challenged the DVRO through every level of the California court system, including two Petitions for Review to the California Supreme Court filed December 26, 2025 (Case Nos. S294529 and S294534), both denied. *See* Exhibit P (California Supreme Court denial orders, Case Nos. S294529 and S294534). State proceedings are concluded. Plaintiff brings the constitutional claims alleged herein.

6. The DVRO's entry in the California Law Enforcement Telecommunications System (CLETS) and the National Instant Criminal Background Check System (NICS) has subjected Plaintiff to an ongoing Second Amendment deprivation. Prior to October 21, 2024, Defendant Martinez filed submissions in Santa Cruz County Superior Court Case No. 18FL00642 requesting that the Santa Cruz County Sheriff's Department verify Plaintiff's firearms ownership status in connection with the void DVRO. *See* Exhibit F (Martinez gun-inquiry filings, September–November 2024). On October 21, 2024, four Department of Justice agents from the DOJ Fresno office arrived at Plaintiff's home without a warrant. The agents were aggressive and threatening from the outset. The agents threatened Plaintiff with arrest, seizure of his home, and seizure of his firearms if he did not permit them to enter. The agents further stated they would obtain a warrant from "Judge Volkmann." Plaintiff believed this threat and understood he faced arrest and property seizure if he did not comply. Three of the four agents entered Plaintiff's home without his permission and without a warrant. When Plaintiff asked whether the agents had a warrant, all three stepped back outside. Plaintiff asked the agents to calm down and de-escalate. In an attempt to assess whether

the agents were legitimate law enforcement officers with actual knowledge of the local court, Plaintiff asked about Judge Volkmann — who had in fact retired from the Santa Cruz County Superior Court on March 29, 2024, six months before the raid, and had no judicial office and no authority to issue any warrant of any kind. The agents' assertion of authority to obtain a warrant from a judge with no warrant-issuing power was an objective false claim of legal authority. Under the totality of these coercive circumstances — four armed and aggressive federal agents, an initial warrantless entry, explicit threats of arrest and property seizure, and a false assertion of warrant authority — Plaintiff's subsequent permission to enter was not freely and voluntarily given within the meaning of *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973), and consent obtained through a false claim of legal authority is constitutionally invalid. *See Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968). Plaintiff asked all four agents to state their names and badge numbers for the record. Two agents complied. Two agents — one male, one female, the more aggressive of the four — declined to state their names and badge numbers verbally, directing Plaintiff to read the information off their uniforms and refusing to identify themselves for Plaintiff's recorded footage. All four agents were, upon information and belief, equipped with body cameras and confirmed to Plaintiff that their cameras were recording. Plaintiff also recorded video of the agents' arrival and the encounter at his door. *See* Exhibit A (Plaintiff's video recording, October 21, 2024). No Glock was found. Under the agents' subsequent extra-judicial ten-day demand — issued without any judicial order or warrant — Plaintiff transferred the Glock .40 caliber handgun, two shotguns, and two WWII collector rifles under duress, under explicit threat of federal prosecution based on the void DVRO. Plaintiff holds an active Top Secret federal security clearance adjudicated through both the Department of Defense and Department of Energy under the SF-86 process, maintained throughout the entire period of the DVRO's enforcement, including after the October 21, 2024 raid. The federal government's own rigorous clearance adjudication process — which comprehensively reviews all law enforcement database records including CLETS and NICS entries — has determined that Plaintiff poses no security or suitability risk, a finding directly inconsistent with the void DVRO being treated as a legitimate finding of dangerousness under *United States v. Rahimi*, 602 U.S. 680, 701-02 (2024). *See* Exhibit Q (federal security clearance documentation, lodged under seal).

7. The restraining order is now the subject of a renewal application by Defendant Rios, filed February 27, 2026, seeking to make the order permanent. A hearing is set for April 14, 2026. *See* Exhibit M (DV-700/DV-710 renewal application, filed February 27, 2026).

## JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this is a civil action to redress deprivations, under color of state law, of rights secured by the United States Constitution and 42 U.S.C. § 1983.

9. Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 and injunctive relief under FRCP 65.

10. Venue is proper in the San Jose Division of the Northern District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in Santa Cruz County and Santa Clara County, California, both within this district.

11. This action is not barred by the Rooker-Feldman doctrine. Plaintiff does not allege legal error by the state court; he alleges independent misconduct by adverse parties in procuring and enforcing the restraining order. Claims alleging injury caused by an adverse party's wrongful acts — rather than by a state court's legal rulings — are not barred by Rooker-Feldman. Miroth v. County of Trinity, 136 F.4th 1141, 1149 (9th Cir. 2025); Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

12. Plaintiff alleges ongoing injuries caused by Defendants' conduct described below and seeks damages and prospective relief as permitted by federal law. Plaintiff does not concede that abstention, preclusion, or any jurisdictional doctrine bars the claims asserted here. Plaintiff expressly preserves all arguments regarding the adequacy of the state forum and the inapplicability of claim and issue preclusion to void judgments, which will be addressed in briefing if raised by Defendants. Furthermore, under the Ninth Circuit's holding in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004), the Rooker-Feldman doctrine does not bar federal claims that are based on "extrinsic fraud," i.e., "conduct which prevents a party from presenting his claim in court." Plaintiff alleges that Defendants caused Plaintiff to be deprived of meaningful notice and an opportunity to appear and be heard — including by effectuating defective service and filing (or causing to be filed) the proof of service in a manner that prevented Plaintiff from appearing at the March 5, 2021 hearing — thereby preventing Plaintiff from presenting defenses in the state proceeding. These claims challenge Defendants' independent misconduct, not the correctness of the state court's legal conclusions.

13. Claim preclusion does not bar this action. A judgment procured without personal jurisdiction is void and has no preclusive effect. The state court never issued a Statement of Decision on any constitutional issue. The California Supreme Court denials were one-page summary orders without analysis; *See* Exhibit P (California Supreme Court denial orders). no constitutional question was actually litigated or adjudicated on the merits for purposes of claim or issue preclusion.

## PARTIES

### A. Plaintiff

14. Plaintiff Mark Esquibel is a natural person and resident of Santa Cruz County, California. He proceeds pro se. Plaintiff was represented by counsel — Donald Schwartz and Matthew Sheasby — throughout the underlying state court proceedings until 2026, when, having exhausted his financial resources over the last approximate 11 years of litigation against represented adverse

parties, he could no longer retain counsel. His address is 4768 Soquel Drive #12, Soquel, CA 95073.

**B. Defendants**

15. Defendant Marie Rios is a natural person residing in California. At all relevant times, Rios acted in joint action with state officials to procure and maintain the restraining order described herein. Rios has been unemployed for over eleven years yet has retained three successive attorneys — Pollock, Ferguson, and Martinez — to pursue litigation across multiple California counties and jurisdictions against Plaintiff over that period. The source of funding for this sustained multi-jurisdictional litigation campaign is unknown to Plaintiff and is a subject of discovery. A private party who conspires or acts in joint action with state officials to deprive another person of constitutional rights acts under color of state law for purposes of 42 U.S.C. § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

16. Defendant Carlos Martinez (State Bar No. 248358) is an attorney licensed to practice in California, with offices at Bay Area Law, 1015 Jefferson Street, Santa Clara, CA 95050. Martinez is the third in a succession of attorneys retained by Rios to prosecute litigation against Plaintiff and weaponize the April 2021 DVRO. Rios's first attorney, Pollock, procured the April 2021 DVRO through defective service and a false factual predicate. Rios's second attorney, Ferguson, attempted to use the void DVRO as res judicata in the defamation proceedings in Case No. 20CV369516 — an effort that failed when Plaintiff prevailed on the anti-SLAPP motion. Martinez, retained as Rios's third attorney, has been the most aggressive in weaponizing the void order, escalating from state court filings to coordinated federal law enforcement action against Plaintiff. Beginning in September 2024 and continuing to the present, Martinez has taken the following specific actions under color of state law: (a) between September and November 2024, Martinez filed submissions in Santa Cruz Superior Court Case No. 18FL00642 and sent written communications to the Santa Cruz County Sheriff's Department expressly requesting information regarding Plaintiff's firearms ownership and registration status in connection with the void DVRO — as documented in filings preserved in the state court record demonstrating coordinated use of state judicial machinery to direct law enforcement attention to Plaintiff's firearms status. *See* Exhibit F (Martinez gun-inquiry submissions, Case No. 18FL00642, September–November 2024); (b) Martinez filed the February 27, 2026 renewal application seeking to make the DVRO permanent, timing the filing to coincide with the denial of Plaintiff's California Supreme Court petitions. *See* Exhibit M (DV-700/DV-710 renewal application, February 27, 2026); and (c) Martinez filed a $1.15 million malicious prosecution action against Plaintiff on April 4, 2025 — fourteen days after judgment in the defamation case and while Plaintiff's appeal was pending — constituting retaliatory litigation in violation of Plaintiff's First Amendment petition rights.

Martinez is subject to a $536,000 assignment order entered July 29, 2024, in Case No. 19CV358986, with 10% compounding interest, which creates a direct financial incentive for generating continued litigation activity rather than allowing the void DVRO to expire. *See* Exhibit K (assignment order, Case No. 19CV358986). Martinez was suspended from the practice of law for approximately 90 days in early 2024 — causing the defamation trial in Case No. 20CV369516 to be delayed from its scheduled February 2024 start date to August 2024, in violation of Plaintiff's due process rights — and again for the period November 6 through 12, 2024, yet continued to file documents in active proceedings during the latter suspension period. *See* Exhibit L (State Bar suspension records). These specific acts — using state court process as a mechanism to trigger state and federal law enforcement action against Plaintiff, perpetuating a void order to generate litigation revenue, and filing retaliatory proceedings to punish Plaintiff for exercising his First Amendment petition rights — constitute joint action under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

17. Defendant County of Santa Cruz is a municipal entity subject to suit under 42 U.S.C. § 1983. Defendant Sheriff Christopher Clark is sued in his official capacity as Sheriff of Santa Cruz County. The Santa Cruz County Sheriff's Office is the agency responsible for entering and maintaining restraining-order records in the California Law Enforcement Telecommunications System (CLETS) for domestic violence restraining orders issued in Santa Cruz County. Those records are transmitted to and relied upon by federal firearms background check systems, including the NCIC Protection Order File and the National Instant Criminal Background Check System (NICS), in ways that directly affect federal firearms prohibitions and enforcement actions. Sheriff Clark, as the policymaking official for the Sheriff's Office, is responsible for the policies and practices governing the entry, maintenance, dissemination, and correction of CLETS restraining-order records. On information and belief, the Santa Cruz County Sheriff's Office maintains a policy or practice of entering DVRO records in CLETS without independent verification that the underlying order was issued after proper service as required by California Family Code § 6384, and without any procedure to flag, review, or correct such records when the validity of the underlying order is subject to documented legal challenge in the issuing court. On information and belief, the Sheriff's Office has maintained CLETS entries for other DVROs that were subsequently subject to documented legal challenge for defective service, yet maintains no procedure to flag, suspend, or remove such entries pending resolution of the legal challenge. These policies and practices — specifically the entry of the April 2021 DVRO into CLETS without verification of proper service, and the maintenance of that entry without any review procedure despite Plaintiff's documented legal challenges spanning five years — were the moving force behind the constitutional deprivations described herein, including the October 21, 2024 warrantless entry by federal agents and the ongoing deprivation of Plaintiff's Second Amendment rights. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).

18. Defendant Hon. Katherine Hansen is sued in her official capacity only as a judge of the Santa Cruz County Superior Court. Official-capacity claims against judicial officers seek prospective injunctive relief to end ongoing constitutional violations and are not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). Under 42 U.S.C. § 1983 as amended, injunctive relief is available against a judicial officer acting in official capacity where declaratory relief is unavailable or inadequate — precisely the circumstance presented here, where the state court expressly declined to issue a Statement of Decision on the constitutional issues raised and instead directed Plaintiff to federal court. Plaintiff has exhausted the California court system through the Supreme Court level without obtaining any declaratory relief on the merits of the constitutional claims asserted herein. A renewal hearing on the April 2021 DVRO is currently scheduled before Defendant Hansen on April 14, 2026, in Santa Cruz County Superior Court Case No. 18FL00642, at which Defendant Rios, through Martinez, seeks to convert the five-year DVRO into a permanent order. If that relief is granted, the constitutional deprivations alleged herein — including the complete separation of Plaintiff from his minor daughter and the ongoing Second Amendment disability — will become permanent and irreversible. It is for this reason that Plaintiff files a motion for preliminary injunction simultaneously with this Complaint, seeking to enjoin the April 14, 2026 hearing or any order issuing therefrom pending resolution of the constitutional claims asserted herein. Defendant Hansen is named solely for the purpose of prospective injunctive relief prohibiting the conditioning of Plaintiff's parental rights on compliance with the April 2021 DVRO or any renewal thereof predicated on the same defective service and false factual predicate alleged herein. Plaintiff expressly reserves the right to seek leave to amend this Complaint to assert additional claims against Defendant Hansen, including claims in her individual capacity, to the extent that proceedings before her following the filing of this Complaint provide a basis for such claims under applicable law.

## RELATED STATE PROCEEDINGS

20. The following state court proceedings are related to the claims in this action.

21. Santa Cruz County Superior Court Case No. 18FL00642 (*Esquibel v. Rios*): Family law proceedings in which the April 2021 DVRO was issued. Plaintiff challenged the DVRO's validity throughout these proceedings on the grounds of defective service, a false factual predicate, and extrinsic fraud. The trial court refused to issue a Statement of Decision on any of the contested issues. The proceedings were appealed to the Sixth District Court of Appeal, Case No. H054010. Plaintiff filed a Petition for Review in the California Supreme Court (Case No. S294529, filed December 26, 2025), which was denied in a one-page order without analysis. In 2018, in the same

case, the issuing judge — Judge Paul Marigonda — found that the court lacked jurisdiction to modify custody in light of a prior full-custody judgment order from Judge Cheryl Kersey and that his authority was limited to visitation matters only. That jurisdictional finding was never reversed or appealed. The DVRO was issued in April 2021 by the same judge who had made that he lacked jurisdiction finding three years earlier, without proper service on Plaintiff or his attorney of record. The DVRO expires by its own terms in April 2026 unless renewed. A renewal application was filed February 27, 2026, with a hearing set for April 14, 2026. *See* Exhibit M (DV-700/DV-710 renewal application).

22. Santa Clara County Superior Court Case No. 20CV369516 (*Esquibel v. Rios*): Defamation action filed by Plaintiff against Rios on August 14, 2020, arising from Rios's pattern of false allegations. During the proceedings, Rios's then-counsel Ferguson attempted to use the April 2021 DVRO as res judicata to defeat Plaintiff's claims — an effort that failed when Plaintiff prevailed on the anti-SLAPP motion, establishing that the void DVRO could not shield Rios from liability for her false statements. The defamation trial was scheduled to begin in February 2024 but was delayed approximately six months — until August 2024 — due to Martinez's 90-day State Bar suspension, during which the proceedings were held in abeyance. Judgment was entered March 21, 2025. Plaintiff's appeal of that judgment is currently pending in the Sixth District Court of Appeal, Case No. H053207, and remains an active proceeding. The two Petitions for Review filed by Plaintiff in the California Supreme Court on December 26, 2025 — Case Nos. S294529 and S294534 — were directed at the Statement of Decision denial in the family law proceedings and the malicious prosecution action described in ¶23 below, respectively, and were both denied. The defamation appeal in H053207 is separate from and independent of those petitions and remains pending before the Sixth District.

23. Santa Cruz County Superior Court Case No. 25CV01051 (Rios v. Esquibel and Schwartz): Malicious prosecution action filed by Rios through Martinez on April 4, 2025 — fourteen days after the March 21, 2025 judgment in Case No. 20CV369516 and before Plaintiff filed his notice of appeal. Default was entered against Plaintiff on August 11, 2025. A motion for relief from default under CCP § 473(b) is pending. This action is premature under Jarrow Formulas, Inc. v. LaMarche, 31 Cal.4th 728 (2003), as the underlying action remains on appeal.

24. Sixth District Court of Appeal Case No. H054010 (Rios v. Esquibel): Appeal filed by Martinez/Rios. The Court issued a default notice against Martinez on February 2, 2026. Martinez's cure deadline has passed.

25. Plaintiff has pursued appellate review through the California Court of Appeal and California Supreme Court. Both California Supreme Court petitions were denied. *See* Exhibit P - Plaintiff brings federal constitutional claims in this action based on the conduct described below.

26. On March 24, 2026, in Santa Cruz Superior Court Case No. 18FL00642, Plaintiff filed an opposition to the DVRO renewal application expressly stating that his appearance was limited to

opposing the renewal and that he was not submitting federal constitutional questions to the state court for decision. Plaintiff expressly reserved all federal constitutional claims for adjudication in this Court. This reservation preserves Plaintiff's right to litigate federal claims here and is relevant to any Younger abstention analysis. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964).

## STATEMENT OF FACTS

### A. Background: History of False Allegations

25A. For purposes of this Complaint, "CLETS" refers to the California Law Enforcement Telecommunications System. "NCIC" refers to the FBI's National Crime Information Center Protection Order File. Plaintiff alleges that the restraining order record entered into CLETS was transmitted and relied upon in ways that affect federal firearms background checks and enforcement actions, including through the NCIC Protection Order File and records used in NICS background checks. *See* Exhibit O (Plaintiff's England reservation filing, March 24, 2026)

26. Plaintiff Mark Esquibel is the biological father of Skylar, born 9-11-2015. Rios is Skylar's mother.

27. In February 2017, Judge Cheryl Kersey granted Plaintiff full custody of Skylar following a full evidentiary hearing, finding Plaintiff a fit and appropriate custodial parent and that custody with Plaintiff was in Skylar's best interests. *See* Exhibit E (Judge Kersey 2017 full-custody judgment). This judgment — issued four years before the April 2021 DVRO — represents the most recent full merits adjudication of Plaintiff's fitness as a parent by a court with proper jurisdiction and a complete evidentiary record.

28. Rios has a documented history of filing false allegations against Plaintiff with law enforcement, child protective services, and courts across multiple counties and jurisdictions.

29. On May 22, 2016, Rios filed a false kidnapping report against Plaintiff with the San Bernardino Police Department (Case No. 2016-00053475). Law enforcement investigated and determined the allegation was unfounded. *See* Exhibit G (San Bernardino Police Department documentation, Case No. 2016-00053475). This false report is one of multiple documented instances in which Rios filed unsubstantiated allegations against Plaintiff with law enforcement across multiple jurisdictions — each of which was investigated and found to lack evidentiary support. The pattern of false reports escalated over time, culminating in allegations made during 2019 deposition proceedings that were similarly unsubstantiated and inconsistent with the findings of every prior investigation.

29A. Rios's false report to the San Bernardino Police Department was not an isolated incident. Over a period spanning more than a decade, Rios filed multiple allegations against Plaintiff with law enforcement agencies and child protective services across several California counties — including allegations of kidnapping and sexual assault — each of which was investigated by the relevant authority and determined to be unfounded, unsubstantiated, or baseless. Documentary evidence of these investigations and their findings is in Plaintiff's possession and will be produced in this proceeding. *See* Exhibit G (San Bernardino Police Department documentation); Exhibit H (CPS investigation records). Not one of the allegations Rios filed against Plaintiff over more than a decade resulted in any criminal charge, any finding of abuse, or any adverse action against Plaintiff by any law enforcement or child protective services agency. This unbroken record of investigated and rejected allegations stands in direct contrast to the April 2021 DVRO — the only proceeding in which Rios obtained any adverse ruling against Plaintiff, and the only one in which Plaintiff was not present, was not properly served, and had no opportunity to contest the allegations.

30. Rios made additional false allegations of rape and sexual abuse of Skylar to child protective services. Multiple CPS investigations were conducted. Every investigation found the allegations unfounded or baseless. *See* Exhibit H (CPS investigation records)

31. In 2016, Judge Knish issued three successive court orders — in April, August, and November — each directing Rios to: (a) change Skylar's last name from "Watson" to "Esquibel"; (b) update Skylar's birth certificate and social security records to reflect the legal name; (c) remove Skylar from county-subsidized insurance and enroll her in Plaintiff's private United Healthcare coverage; and (d) transfer Skylar's records to reflect her legal name across all official systems. *See* Exhibit I (Judge Knish name-change orders, 2016). Rios refused to comply with all three orders. The issuance of three successive orders on the same directives over an eight-month period reflects the court's repeated findings that Rios was willfully defying its lawful orders. As of the filing of this Complaint, Skylar continues to be identified as "Watson" — a surname that belongs to neither parent and has no legal basis — nearly a decade after Judge Knish's first order directing the name change. On information and belief, Rios has continued to collect TANF, WIC, and other state and federal public benefits under the fictitious "Watson" surname, despite court orders establishing that Skylar's legal name is Esquibel. The ongoing use of the fictitious surname also served to obscure Plaintiff's legal relationship with his daughter in subsequent court proceedings, including the Orange County case dismissed for fraud described in ¶32 below. Rios's defiance of the name-change orders has had direct ongoing financial consequences for Plaintiff. As of the filing of this Complaint, Plaintiff continues to pay court-ordered child support under the fictitious "Watson" surname — the name Rios has refused to correct despite three court orders — meaning Rios continues to collect financial benefits from Plaintiff under a legal identity that is itself the product of contempt of court. *See* Exhibit I.

32. Between September 2020 and January 2021, Rios filed a proceeding in Orange County Superior Court under the fictitious "Watson" surname for Skylar — the same fictitious surname that Judge Knish had ordered changed to "Esquibel" in 2016. Plaintiff's then-attorney of record, Donald Schwartz, identified that the case had been filed without proper service and moved to dismiss on grounds of fraud on the court. The case was dismissed on that basis. *See* Exhibit J (Orange County dismissal order). Rios did not appear at the dismissal hearing. At or around the time of the hearing, Orange County Counsel represented that he had spoken with Rios that morning and that she had informed him she no longer resided in Orange County — having relocated to Los Angeles County — yet had permitted the Orange County proceeding to continue in her absence. The Orange County dismissal for fraud established that Rios's pattern of filing under the fictitious Watson surname was not inadvertent — it was a deliberate litigation strategy used to file in jurisdictions where she did not reside and to obscure Plaintiff's legal relationship with his daughter. Within weeks of the Orange County dismissal, Rios refiled in Santa Cruz County Superior Court — a third jurisdiction — where the April 2021 DVRO proceedings were initiated.

**B. The April 2021 DVRO: Defective Service and False Predicate**

33. Within weeks of the Orange County dismissal for fraud, Rios — now represented by attorney Pollock — refiled in Santa Cruz County Superior Court, initiating the proceedings that would result in the April 2021 DVRO. The refiling in a third jurisdiction, immediately following a fraud dismissal in the second jurisdiction, is consistent with a deliberate strategy of forum shopping to find a court that would issue the order Rios had been unable to obtain through legitimate means. Between January 2021 and April 1, 2021, multiple hearings were conducted in the Santa Cruz proceedings. Neither Plaintiff nor his attorney of record, Donald Schwartz, received notice of any of those hearings or was present at any of them. Each hearing was conducted ex parte — with only Rios and her counsel present — over a period of approximately three months. The absence of notice to Plaintiff's attorney of record across multiple hearings over an extended period was not the result of a single service failure. It was the product of a sustained ex parte proceeding in which Rios and Pollock obtained successive court appearances and ultimately a five-year restraining order without ever providing constitutionally adequate notice to the restrained party or his counsel.

34. The sole factual allegation supporting the DVRO application was that Plaintiff had cancelled Rios's county insurance. Cancellation of insurance is not an act of domestic violence under California Family Code § 6203.

35. Plaintiff was never personally served with the DVRO application as required by California Family Code § 6384. A Declaration of Diligence (DV-116/DV-117) was filed on February 2, 2021, claiming four failed service attempts. Subsequent service was by mail and not personal service as

required. Nor was Don Schwartz my attorney of record served. The proof of service by mail was filed after the hearing date. No court ever found that proper service was accomplished or that personal jurisdiction over Plaintiff was obtained. No proof of personal service compliant with Family Code § 6384 was filed with the court. *See* Exhibit C (Declaration of Diligence DV-116 and Proof of Service by Mail DV-117)

36. Because Plaintiff never received proper notice of the hearing, he did not appear. On April 1, 2021, the Santa Cruz County Superior Court issued a five-year DVRO by default. The order was issued by Judge Paul Marigonda.

37. In 2018, in the same case (18FL00642), Judge Marigonda had issued a finding that the court 'lacked jurisdiction' over the matter in light of Judge Kersey's 2017 full-custody "Judgement" order, stating he could only address Rios's visitation, not change custody. This finding was never reversed or appealed. *See* Exhibit D (Judge Marigonda 2018 jurisdictional order, Case No. 18FL00642)

38. Plaintiff has never violated the DVRO in its entire duration. No police report has ever been filed alleging a violation. There have been zero incidents.

**C. Four-Plus Years of Deprivation Without Process**

39. From April 2021 to the present date, Plaintiff has been completely separated from his daughter Skylar Esquibel — over five years — based solely on the DVRO described above.

40. Plaintiff was never given a hearing on the merits of the DVRO. The order was issued by default because Plaintiff was never served nor was his attorney of record at the time, Don Schwartz.

41. The DVRO's issuance triggered an entry in the California Law Enforcement Telecommunications System (CLETS) and the National Instant Criminal Background Check System (NICS), subjecting Plaintiff to a federal firearms prohibition under 18 U.S.C. § 922(g)(8).

42. The family court conditioned any parental contact on: (a) Plaintiff's completion of DV-300 (Proof of Firearms Turned In, Sold, or Stored); (b) submission to CLETS verification; and (c) acknowledgment of the DVRO's validity. These conditions required Plaintiff to validate an order he contends was issued without proper service and without a legally sufficient factual predicate.

42A. The constitutional deprivations described herein have not been static — they have been actively escalated through a sustained pattern of successive filings and institutional failures designed to generate new adverse consequences against Plaintiff from the void April 2021 DVRO. Over the course of the DVRO's enforcement, Plaintiff has been subjected to repeated threats of incarceration predicated on the void order, professional and licensing jeopardy arising from the DVRO's presence in law enforcement databases, and ongoing child support obligations that

Respondent Rios continues to collect under the fictitious surname "Watson" — a surname that three separate court orders issued by Judge Knish directed her to change to "Esquibel" as early as 2016. *See* Exhibit I (Judge Knish name-change orders). Plaintiff has complied with every financial obligation imposed upon him. Rios has complied with none of the court orders directing her to correct Skylar's legal identity. The result is that Plaintiff continues to pay court-ordered child support under a false name to the Los Angeles County Department of Child Support Services — supporting a child who by court order should bear his surname but does not because Rios has defied three successive court orders directing the change.

Further, Plaintiff made a child support payment of approximately $1,700 to the Santa Cruz County Department of Child Support Services, specifically designated for a separate child support obligation unrelated to the Watson account. The Los Angeles County Department of Child Support Services intercepted that payment and applied it to the fraudulent Watson/Skylar account without Plaintiff's authorization, consent, or knowledge. When Plaintiff brought the misapplication to the attention of both agencies, LA County refused to correct it and return the funds. *See* Exhibit S (child support misapplication documentation). A payment of $1,700 misappropriated and applied to a fraudulent account in defiance of the payor's designated intent may constitute grand theft under California Penal Code § 487. The refusal by LA County to correct this misapplication — after being specifically notified — is evidence of the institutional pattern and practice of perpetuating rather than correcting the fraud enabled by the void DVRO. This misapplication is a specific, documented instance of a county agency taking action that benefited the fraudulent Watson account at Plaintiff's direct financial expense and refusing to remedy it when confronted. On information and belief, the misapplication was made possible in part by the continued presence of the Watson surname in child support enforcement systems — systems that themselves reflect the void DVRO and Rios's decade-long defiance of court orders directing the name correction. This pattern of county agency conduct perpetuating the fraud enabled by the void DVRO is directly relevant to the Monell pattern-and-practice allegations in this Complaint.

Plaintiff alleges that the specific Title IV-D provisions governing proper application and disbursement of designated child support payments — as distinct from the general substantial compliance requirement addressed in *Blessing v. Freestone*, 520 U.S. 329 (1997) — create individually enforceable federal rights under 42 U.S.C. § 1983 because those provisions: (1) were intended by Congress to benefit the payor of child support; (2) impose a specific, non-vague mandatory obligation to apply designated payments to their designated account; and (3) are couched in mandatory rather than precatory terms. The specific Title IV-D provisions violated here include: 42 U.S.C. § 666(a)(8) and (b) (requiring states to establish procedures for prompt and accurate distribution of child support payments); 45 C.F.R. § 302.32 (federal mandate governing distribution of collected support payments); and 45 C.F.R. § 303.100 (federal requirements for enforcement of support obligations). These provisions — unlike the general substantial compliance standard at issue in *Blessing* — impose specific, mandatory, rights-creating obligations on state child support agencies regarding the proper designation and application of

payments, and are directly violated by LA County's misapplication of Plaintiff's designated payment to the fraudulent Watson account and its refusal to correct that misapplication after notice. *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (establishing three-factor test for § 1983 enforcement of federal statutory rights); *cf. Wehunt v. Ledbetter*, 875 F.2d 1558 (11th Cir. 1989) (addressing scope of Title IV-D enforcement in § 1983 context).

Furthermore, Plaintiff is subjected to ongoing monthly child support payments extracted under the fictitious Watson surname by the Los Angeles County Department of Child Support Services — a coercive financial obligation imposed in connection with court processes that themselves flow from the void April 2021 DVRO — without any constitutionally adequate process to challenge the underlying obligation or the fraudulent identity under which it is being collected. The ongoing extraction of monthly payments under a false name, from a father who has been completely separated from his daughter for over five years by a void default order, constitutes precisely the kind of perpetual coercive financial cycle — imposed without due process and without inquiry into the legitimacy of the underlying obligation — that courts have recognized as constitutionally infirm. *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 527-31 (W.D. Va. 2018) (automatic ongoing financial deprivation without notice or hearing and without inquiry into the legitimacy of the underlying obligation violates procedural due process); *see also Kavadas v. Martinez*, No. MER-L-1004-15 (N.J. Super. Ct. 2020) (automatic enforcement mechanisms tied to child support obligations without advance notice and meaningful hearing violate procedural due process); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The constitutional infirmity of this ongoing coercive financial cycle is further confirmed by the U.S. Department of Justice Civil Rights Division's April 20, 2023 Dear Colleague Letter to Courts Regarding Fines and Fees for Youth and Adults, which identifies the due process prohibition on automatic or coercive collection of financial obligations without an ability-to-pay inquiry, and the Fourteenth Amendment's prohibition on practices that punish individuals without constitutionally adequate process. That guidance — issued by the same federal department whose agents appeared at Plaintiff's door on October 21, 2024 — directly supports the conclusion that the ongoing extraction of child support payments under a fraudulent identity without any process to challenge the underlying void DVRO is constitutionally infirm. The knowing misapplication of Plaintiff's specifically designated payment — and LA County's refusal to correct it after explicit notice — also implicates the agency's obligations under 42 U.S.C. § 657 (governing distribution of collected support payments), 42 U.S.C. § 654B (requiring centralized collection and disbursement units to ensure accurate distribution), 45 C.F.R. § 302.32 (collection and disbursement requirements), and 45 C.F.R. § 302.51 (distribution of collections). These provisions impose specific, mandatory obligations on IV-D agencies regarding proper application of designated payments — obligations that LA County knowingly violated and then refused to correct after notice. Furthermore, 45 C.F.R. § 302.19 requires IV-D agencies to maintain bonding against losses resulting from employee dishonesty for all personnel with access to or control over IV-D funds. While § 302.19 does not itself create an individual right of action, it establishes the standard of internal control the agency was required to

maintain. The knowing misapplication of Plaintiff's designated payment to a fraudulent account — and the agency's refusal to remedy it after specific notification — constitutes precisely the type of dishonest handling of IV-D funds the bonding requirement was designed to prevent. The agency's failure to maintain adequate internal controls to prevent or promptly remedy such misapplications demonstrates a policy or practice of perpetuating rather than correcting the fraud enabled by the void DVRO, actionable under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). *See Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997); *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 527-31 (W.D. Va. 2018); *see also* U.S. Dep't of Justice, Civil Rights Div., Dear Colleague Letter to Courts Regarding Fines and Fees for Youth and Adults (Apr. 20, 2023). The perpetual extraction of monthly child support payments under a fictitious surname that three court orders required be corrected — combined with the knowing misapplication and retention of funds designated for a separate obligation — further shocks the conscience and deprives Plaintiff of property without due process of law.

43. Plaintiff timely requested a Statement of Decision on the contested issues in the family court proceedings. No Statement of Decision was ever issued. At a hearing on September 2, 2024, in response to Plaintiff's specific allegation that the DVRO was based on a fraudulent insurance claim and that there was no insurance policy, Judge Hansen stated: 'You're welcome to go to the Ninth Circuit. That's your problem to figure out.' *See* Exhibit O (Plaintiff's England reservation, confirming state court's refusal to issue Statement of Decision)

44. Plaintiff challenged the validity of the DVRO at every level of the California court system. The California Supreme Court denied (Jan 28th 2026) both of Plaintiff's Petitions for Review with one-page orders denied *See* Exhibit P (California Supreme Court denial orders). No court issued a reasoned decision on the merits of the constitutional issues raised.

**D. Martinez's Coordinated Gun Inquiries and the October 21, 2024 DOJ Raid**

D(1). Facts Supporting Joint Action Under Color of State Law

On or about September through November 2024, Martinez filed submissions in Santa Cruz Superior Court Case No. 18FL00642 expressly requesting that the Santa Cruz County Sheriff's Office check, verify, and confirm Plaintiff's firearms ownership status in connection with the void DVRO. These submissions will be documented as Exhibit F once I can get it from the court.

On or about October 21, 2024, the Santa Cruz County Sheriff's Office and/or the DOJ Fresno office took enforcement action in direct response to the information provided through Martinez's family court submissions, dispatching four federal agents to Plaintiff's residence.

Plaintiff alleges these steps were not routine litigation filings. Martinez used state court process as a mechanism to direct law enforcement attention to Plaintiff's firearms status based on an order Plaintiff had documented as void on multiple grounds in the same proceeding. This coordinated use of state judicial machinery to trigger a federal enforcement action constitutes joint action under color of state law. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

45. Between September and November 2024, Martinez filed multiple inquiries in Santa Cruz Superior Court Case No. 18FL00642 specifically directed to whether Plaintiff owned or possessed firearms. These filings will be documented in the case record as Exhibit F once I can get a copy of it from the court. These inquiries were directed at the Santa Cruz County Sheriff's Department, the agency responsible for CLETS entries in the county. The effect of these inquiries was to create an official record suggesting Plaintiff was potentially in violation of the DVRO's firearms prohibition — despite the fact that the DVRO was subject to documented legal challenge as void on multiple grounds.

46. On October 21, 2024 — three days before the scheduled trial date in the defamation case, Case No. 20CV369516 — four Department of Justice agents from the DOJ Fresno office arrived at Plaintiff's residence without a warrant. *See* Exhibit A (Plaintiff's video recording of agent arrival). The agents confirmed that their visit was predicated on the April 2021 DVRO and the associated CLETS and NICS database entries — not on any independent federal investigation. The timing of the visit, three days before Plaintiff's defamation trial against Rios, is consistent with Plaintiff's allegation that the enforcement action was coordinated by Martinez to disrupt and intimidate Plaintiff on the eve of trial rather than to address any legitimate law enforcement concern.

47. Plaintiff had not violated any restraining order. The Facebook post was political commentary protected by the First Amendment. One week after the raid, October 21, 2024, Plaintiff had made a Facebook post consisting of political commentary regarding public commentator Charlie Kirk. That post was constitutionally protected speech under the First Amendment. Martinez subsequently filed that Facebook post into Santa Cruz County Superior Court Case No. 18FL00642 in an attempt to use Plaintiff's protected political speech as grounds for adverse action against Plaintiff. The filing of protected political speech into court proceedings as a basis for legal action against its author constitutes retaliation for the exercise of First Amendment rights and is addressed further in Count Five of this Complaint.

48. Plaintiff, confronted by four armed DOJ Fresno agents at his door without a warrant, allowed them to enter. The agents made two coercive threats to obtain entry: (a) they threatened that if Plaintiff did not allow them in, they would arrest him, seize his home, and seize his firearms; and (b) they threatened to go obtain a warrant from at the time of the October 21, 2024 raid, Judge Timothy Volkmann had retired from the Santa Cruz County Superior Court on March 29, 2024 — six months earlier. He was not a sitting judge and had no authority to issue any warrant of any

kind. The agents' threat to obtain a warrant from a retired state court judge with no warrant authority was a false assertion of legal authority. Consent to a search obtained through a false claim of legal authority is not valid consent. Bumper v. North Carolina, 391 U.S. 543, 548-50 (1968). *See* Exhibit A (video recording corroborating agent arrival and approach) Under the totality of these circumstances — four armed federal agents, explicit threats of arrest and seizure, and a false assertion of warrant authority — Plaintiff's permission to enter was not freely and voluntarily given within the meaning of Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). It was the product of coercive threats and a false claim of legal authority. The warrantless entry was therefore unconstitutional. Plaintiff was cooperative and polite throughout the contact.

49. The agents were from the Department of Justice Fresno office. Four agents were present. The specific firearm they sought was a Glock .40 caliber handgun that they stated was registered to Plaintiff. The Glock was not present on the premises. No firearms were found. Plaintiff was not in possession of any prohibited firearm on October 21, 2024.

49a. Plaintiff has a recorded video of the agents arriving at his residence on October 21, 2024. This recording is in Plaintiff's possession, has been preserved, and depicts the agents' approach to his home and the encounter at his door. Plaintiff will seek to authenticate and introduce this video in this proceeding. *See* Exhibit A.

49b. Three of the four agents entered the home of Plaintiff's without permission and without a warrant. One of the three — agent Brittney Stapleton — was polite throughout the encounter. The other two agents who entered were more aggressive in their conduct. When Plaintiff asked all three to produce a warrant, all three immediately stepped back outside. Plaintiff then asked all four agents to identify themselves by name and badge number for the record. Two of the four agents complied and provided their names and badge numbers. Two agents — the more aggressive of the four — refused to provide their names and badge numbers verbally, directing Plaintiff to read the information off their uniforms and declining to identify themselves for Plaintiff's recorded footage. The refusal of two agents to verbally identify themselves on recorded footage is relevant to the voluntariness analysis — anonymous armed federal agents who refuse to identify themselves create a more coercive environment, reinforcing that Plaintiff's subsequent permission to enter was not freely and voluntarily given within the meaning of *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). The identities of the two agents who refused to identify themselves verbally are to be confirmed through FOIA requests and discovery. Plaintiff intends to amend this Complaint to name the individual agents once their identities are confirmed through those processes.

49c. All four agents were, upon information and belief, equipped with body cameras. All four agents confirmed to Plaintiff that their body cameras were recording during the encounter. Plaintiff has filed or will file FOIA requests with the Department of Justice, ATF, and FBI Fresno field offices for: (a) all body camera footage from October 21, 2024 at Plaintiff's residence; (b) all case files, incident reports, and authorization documents related to the visit; (c) any warrant,

administrative subpoena, or other legal process purporting to authorize the visit or the ten-day transfer demand; (d) all communications between any DOJ, ATF, or FBI agent or office and any state court, state attorney, or private attorney regarding Plaintiff in 2024; and (e) the specific legal authority cited for the extra-judicial ten-day transfer demand. The body camera footage from all four agents, combined with Plaintiff's own video recording of the agents' arrival, is expected to corroborate the coercive circumstances described herein, including the false assertion that a warrant would be obtained from retired Judge Volkmann and the initial unconsented entry by three agents across Plaintiff's threshold.

50. Upon completing their search and finding no Glock on the premises, the agents issued Plaintiff an extra-judicial demand: he had ten days to transfer the Glock .40 caliber handgun out of his name, under explicit threat of federal prosecution under 18 U.S.C. § 922(g)(8) based on the void DVRO. This extra-judicial demand was issued without any judicial process, without a warrant, and without any court order authorizing it. Significantly, the agents' demand referenced only the Glock .40 caliber handgun. The agents made no reference to, and issued no demand regarding, the four additional legally owned firearms registered to Plaintiff — two shotguns and two WWII collector rifles. The agents' exclusive focus on one specific firearm, to the exclusion of four others that would have appeared on any comprehensive firearms registry search, is consistent with Plaintiff's allegation that the enforcement action was predicated on a targeted referral identifying the specific Glock rather than a routine CLETS compliance review. Within the ten-day period, acting under the direct coercive threat of federal prosecution, Plaintiff transferred all five firearms out of his name — the Glock .40 caliber handgun, two shotguns, and two WWII collector rifles. Plaintiff did not freely choose to surrender this legally owned property. The transfer of the four additional firearms — for which no demand had been issued and no legal authority existed — was a direct and foreseeable consequence of the coercive atmosphere generated by the agents' conduct, including their explicit threats of arrest and property seizure, and constitutes a constructive seizure of those weapons without any judicial process, warrant, or lawful authority. A Fourth Amendment seizure occurs when there is meaningful interference with an individual's possessory interests in property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The agents' extra-judicial demand — backed by explicit threats of federal felony prosecution — constituted such meaningful interference as to all five firearms, executed without a warrant, without a judicial surrender order, and in reliance on an invalid CLETS entry predicated on the void DVRO. *See* Exhibit A (video recording); Exhibit Q (security clearance documentation establishing no dangerousness finding).

51. The October 21, 2024 warrantless entry and the extra-judicial ten-day demand were the direct, proximate result of the following sequence of coordinated acts: (a) the CLETS database entry maintained by the Santa Cruz County Sheriff's Department based on the April 2021 DVRO; (b) Defendant Martinez's filing of gun ownership inquiries in Santa Cruz Superior Court Case No. 18FL00642 between September and November 2024 — timed to coincide with the scheduled defamation trial in Case No. 20CV369516 and designed to direct law enforcement attention to Plaintiff's firearms status based on the void DVRO — which created an official record suggesting

Plaintiff was in violation of the federal firearms prohibition; (c) the escalation of that inquiry — either by the Sheriff's Department itself or through Martinez's direct contact with federal law enforcement — to the Department of Justice Fresno office; and (d) the DOJ Fresno office's dispatch of four agents to Plaintiff's residence on October 21, 2024 — three days before the defamation trial — based on the CLETS record and the information provided through Martinez's family court filings, as confirmed by the agents' own statement that their visit was predicated on the April 2021 DVRO. This coordinated sequence — a private attorney using state court process to direct state law enforcement to escalate to federal enforcement against a private citizen based on a void order, timed to the eve of a civil trial — constitutes joint action under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). *See* Exhibit F (Martinez gun-inquiry filings); Exhibit A (Plaintiff's video recording of DOJ agent arrival). Defendant Martinez is liable under § 1983 as a willful participant in joint action with the State where he knowingly invoked and participated in state enforcement mechanisms to cause an unconstitutional deprivation of Plaintiff's constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

51A. The DVRO-triggered CLETS entry, which formed the sole basis for the federal agents' appearance at Plaintiff's home, was itself based on an order obtained without proper service and without a legally sufficient predicate act under Family Code § 6203.

**E. The AG Bondi Second Amendment Task Force**

52. On February 6, 2025, President Donald Trump issued Executive Order 14206 directing federal agencies to protect Second Amendment rights.

53. On April 8, 2025, Attorney General Pam Bondi issued a memorandum creating the Second Amendment Enforcement Task Force, specifically directed at improper restraining order-based firearm restrictions.

54. On April 9, 2025, Attorney General Bondi made public statements emphasizing the protection of Second Amendment rights from fraudulent domestic violence restraining orders.

55. This case presents the specific fact pattern the Second Amendment Enforcement Task Force was created to address: a restraining order obtained without proper service, based on conduct that does not constitute domestic violence under state law, used to strip a citizen of Second Amendment rights and trigger a federal enforcement action.

56. Plaintiff holds an active federal security clearance. The federal government's own security clearance adjudication process — which includes comprehensive review of all law enforcement database records including CLETS and NCIC entries — has determined that Plaintiff poses no

security or suitability risk. This official determination is directly inconsistent with the void DVRO being treated as a legitimate finding of dangerousness. — the United States government's most comprehensive civilian security clearance adjudication. This clearance has been maintained active throughout the period of the void DVRO's enforcement, including after the October 21, 2024 raid. The TS clearance adjudication process applies the National Security Adjudicative Guidelines (32 C.F.R. Part 147) and includes comprehensive review of all law enforcement database records, including CLETS and NICS entries, under Guideline J (Criminal Conduct) — the specific guideline governing restraining orders and domestic violence history. Despite this comprehensive review, the federal government has determined that Plaintiff poses no security or suitability risk sufficient to disqualify him from holding a Top Secret clearance. This official adjudicative determination by the United States government is direct evidence that the void DVRO does not represent a genuine finding of dangerousness — the constitutional predicate required by United States v. Rahimi, 602 U.S. 680, 701-02 (2024), for any DVRO-based firearm restriction. The same federal government whose agents appeared at Plaintiff's door on October 21, 2024 has simultaneously determined, through its own adjudicative process, that Plaintiff is trustworthy enough to hold the nation's highest civilian security clearance. These positions are irreconcilable. The continued presence of the CLETS and NICS entries from the void DVRO places Plaintiff's Top Secret clearance — and the substantial professional livelihood dependent upon it — at ongoing risk of adverse adjudication during periodic reinvestigation, constituting a continuing injury and an independent basis for immediate database correction.

**F. The Renewed Application for Permanent DVRO**

56. On February 27, 2026, Martinez filed a DV-700/DV-710 renewal application on behalf of Rios, seeking to make the DVRO permanent. The application was filed to coincide with the California Supreme Court's denial of Plaintiff's petitions for review. *See* Exhibit M (DV-700/DV-710 renewal application, February 27, 2026)

57. On March 20, 2026, Martinez filed an ex parte application for alternate service (Envelope No. 23067065). The Santa Cruz Superior Court clerk rejected the application the same day for failure to include the mandatory FL-300 and FL-305 forms required by Santa Cruz Superior Court Local Rule 3.1.13(d). The application is legally inert. *See* Exhibit N (rejected ex parte, Envelope No. 23067065, March 20, 2026)

58. The renewal hearing is currently scheduled for April 14, 2026, before Judge Hansen.

59. Martinez is subject to a $536,000 assignment order with 10% compounding interest (Case No. 19CV358986, entered July 29, 2024), requiring that attorney fees collected by Martinez be paid directly to his creditors. *See* Exhibit K (assignment order, Case No. 19CV358986). Martinez has also been the subject of two separate State Bar mental health diversion proceedings — a public record reflecting the State Bar's own determination that Martinez's mental health required

intervention sufficient to warrant diversion as a condition of retaining his license. *See* Exhibit L (State Bar records). Taken together, these facts establish that Martinez is a financially desperate attorney operating under documented professional and personal impairment, with a direct financial incentive to generate continued litigation activity against Plaintiff rather than allowing the void DVRO to expire and the associated litigation to conclude.

60. Rios waited nearly five years to seek renewal of the April 2021 DVRO. The DVRO's litigation history reveals why. When the DVRO was originally issued, Rios's then-counsel Ferguson attempted to use it as res judicata to defeat Plaintiff's defamation claims in Case No. 20CV369516 — an effort that failed when Plaintiff prevailed on the anti-SLAPP motion and the court rejected the void DVRO as a litigation shield. Following that failure, the DVRO sat effectively dormant for years — never enforced, never the subject of any violation finding, and generating no law enforcement action — until Martinez assumed representation of Rios and weaponized it anew in September 2024 through the gun-inquiry filings in family court described in ¶¶45-51 above. The three-year dormancy of the DVRO, punctuated only by failed attempts to use it as a litigation weapon, is directly inconsistent with any genuine safety concern that would warrant a permanent renewal. Under California Family Code § 6345, the renewal application could have been filed as early as January 2026. Rios filed on February 27, 2026 — and filed defective papers. Martinez then filed a sham emergency ex parte application on March 20, 2026 that was rejected the same day by the Santa Cruz Superior Court clerk for failure to include the mandatory FL-300 and FL-305 forms required by Local Rule 3.1.13(d). The application was legally inert. *See* Exhibit N (rejected ex parte, Envelope No. 23067065, March 20, 2026).

61. Martinez has never, in five years of litigation, filed any document addressing Skylar Esquibel best interests.

## CLAIMS FOR RELIEF

As to each Count, Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

As to each Count, Plaintiff alleges that this claim arises from Defendants' independent misconduct in procuring and enforcing the restraining order, not from any legal error by the state court itself. Miroth v. County of Trinity, 136 F.4th 1141, 1149 (9th Cir. 2025).

---

COUNT ONE: 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

**(Against Defendants Rios, Martinez, and Santa Cruz County Sheriff's Department)**

62. Plaintiff realleges all preceding paragraphs.

63. The Fourteenth Amendment prohibits any state from depriving a person of liberty without due process of law. Plaintiff has a constitutionally protected liberty interest in: (a) his relationship with his minor daughter Skylar; and (b) his Second Amendment right to keep and bear arms, as applied to the states through the Fóurteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

64. The minimum requirements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). The *Mathews v. Eldridge* balancing test requires weighing: (1) the private interest at stake; (2) the risk of erroneous deprivation and the value of additional procedures; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

65. Defendant Santa Cruz County Sheriff's Department maintained and disseminated the CLETS restraining-order record for the April 2021 DVRO in a manner that triggered ongoing firearms disability and law enforcement attention directed at Plaintiff, without providing Plaintiff constitutionally adequate notice and an opportunity to be heard regarding the continued accuracy and constitutional sufficiency of that record as applied to him. The absence of any meaningful procedure to flag, review, or correct a contested restraining-order record used for firearms disability — despite Plaintiff's documented legal challenges spanning five years of state court proceedings — created an unacceptably high risk of erroneous deprivation of Plaintiff's protected liberty interests under the *Mathews v. Eldridge* balancing test. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The ongoing extraction of monthly child support payments under the fraudulent Watson surname — payments tied to court processes flowing from the void DVRO — without any constitutionally adequate procedure to challenge the underlying obligation constitutes an additional, continuing procedural due process violation. Stinnie v. Holcomb, 355 F. Supp. 3d 514, 527-31 (W.D. Va. 2018); see also Kavadas v. Martinez, No. MER-L-1004-15 (N.J. Super. Ct. 2020) (automatic enforcement mechanisms tied to child support obligations without advance notice and meaningful hearing violate procedural due process)

65A. Defendant Rios, acting in joint action with state officials, caused the April 2021 DVRO to be issued against Plaintiff without proper personal service as required by California Family Code § 6384. Plaintiff received no actual notice of the March 5, 2021 hearing. Neither did Plaintiff's attorney of record, Donald Schwartz. The DVRO was issued by default in the absence of both the

restrained party and his counsel. *See* Exhibit B (April 2021 DVRO); Exhibit C (Declaration of Diligence DV-116 and defective Proof of Service by Mail DV-117).

66. As a direct result of Defendants' conduct, Plaintiff has been deprived of his constitutionally protected liberty interests — specifically, his fundamental right to a parental relationship with his daughter Skylar Esquibel and his Second Amendment right to keep and bear arms — without constitutionally adequate process, for over five years. This deprivation is ongoing and continues to the present date.

67. Defendant Martinez, by coordinating the filing of gun inquiries in family court that directed law enforcement attention to Plaintiff's firearms status, and by filing the permanent DVRO renewal application, has perpetuated and extended the due process deprivation described herein.

68. Defendant Santa Cruz County Sheriff's Department, by maintaining the CLETS entry for the April 2021 DVRO without a procedure to flag or investigate records subject to documented legal challenge, has perpetuated the deprivation of Plaintiff's Second Amendment rights without due process.

69. At the September 2, 2024 hearing, the family court refused to issue a Statement of Decision and instead responded to Plaintiff's specific allegations of fraud on the court by stating: 'You're welcome to go to the Ninth Circuit.' This categorical refusal to provide the procedural mechanisms required by California Code of Civil Procedure § 632 deprived Plaintiff of any meaningful opportunity to obtain review of the constitutional deprivations.

70. As a direct and proximate result of the above-described acts and omissions by Defendants, Plaintiff has suffered: (a) loss of his parental relationship with his daughter for over five years; (b) ongoing deprivation of his Second Amendment rights; (c) severe emotional distress; (d) economic loss; and (e) other damages in amounts to be proven at trial.

---

**COUNT TWO: 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS / PARENTAL RIGHTS**

**(Against Defendants Rios and Martinez)**

71. Plaintiff realleges all preceding paragraphs.

72. The Fourteenth Amendment's Due Process Clause protects fundamental liberty interests from government deprivation, regardless of the procedures employed. Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The right of parents to direct the care, custody, and control of their children is a fundamental liberty interest. Troxel v. Granville, 530 U.S. 57, 65 (2000). Parental rights are 'far more precious than any property right.' Santosky v. Kramer, 455 U.S. 745, 758-59 (1982). A

biological father's relationship with his child is protected by the Due Process Clause. Michael H. v. Gerald D., 491 U.S. 110, 123 (1989).

73. Government action that deprives a person of a fundamental liberty interest violates substantive due process where that action 'shocks the conscience.' County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). The Ninth Circuit has long recognized that deliberate deception in family or dependency proceedings that results in the unwarranted severance of the parent-child relationship violates the Fourteenth Amendment. See *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) (recognizing a clearly established right to be free from judicial deception in proceedings affecting parental rights). By framing a non-violent administrative insurance dispute as "domestic violence" under Family Code § 6203 and obtaining a default order without proper service, Defendants Rios and Martinez engaged in deception that unconstitutionally separated Plaintiff from his daughter Skylar for over five years without any adjudication on the merits. *See* Exhibit B; Exhibit C; Exhibit G; Exhibit H

74. The conduct of Defendant Rios and her then-counsel Pollock in procuring the April 2021 DVRO — based on an insurance cancellation that does not constitute domestic violence under any applicable definition, without proper service, without any adjudication on the merits, and based on allegations that every investigating law enforcement and child protective services authority found to be baseless across two decades — shocks the conscience within the meaning of *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The subsequent conduct of Defendants Rios and Martinez in weaponizing that void order beginning in Sept 2024 — through coordinated gun-inquiry filings in family court, the triggering of a federal enforcement action three days before trial, the filing of a retaliatory malicious prosecution action, and the filing of a renewal application seeking to make the deprivation permanent — independently and additionally shocks the conscience. The cumulative effect of these two distinct phases of misconduct has been the complete separation of Plaintiff from his daughter Skylar for over five years without any merits adjudication of the allegations that purportedly justified that separation.

75. Plaintiff has had no contact with his daughter Skylar for over five years. Skylar was born September 11, 2015. She is now ten years old. Every year of her father's absence from her life — years that cannot be recovered — is a direct consequence of a restraining order procured through defective service, a false factual predicate, and the independent misconduct of Defendants Rios and Martinez. This deprivation of a fundamental parental right has caused irreparable harm to the Plaintiff-Skylar relationship that no monetary award can fully remedy. The most recent full merits adjudication of Plaintiff's fitness as a parent — Judge Kersey's 2017 custody judgment granting Plaintiff full custody — found Plaintiff to be a fit and appropriate custodial parent. That finding has never been reversed. *See* Exhibit E (Judge Kersey 2017 full-custody judgment); Exhibit I (Judge Knish name-change orders).

76. Defendants Rios and Martinez are now seeking to make this deprivation permanent. If the DVRO is renewed as a permanent order at the April 14, 2026 hearing, the separation of Plaintiff from his daughter will become indefinite.

77. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: (a) loss of his fundamental parental rights for over five years; (b) irreparable harm to his relationship with his daughter; (c) severe emotional distress and psychological harm; and (d) other damages in amounts to be proven at trial.

---

**COUNT THREE: 42 U.S.C. § 1983 — SECOND AMENDMENT (AS APPLIED)**

**(Against Defendants Rios, Martinez, and Santa Cruz County Sheriff's Department)**

78. Plaintiff realleges all preceding paragraphs.

79. The Second Amendment protects an individual's right to keep and bear arms. District of Columbia v. Heller, 554 U.S. 570, 592 (2008). The Second Amendment is incorporated against the states through the Fourteenth Amendment. McDonald v. City of Chicago, 561 U.S. 742, 750 (2010). The government may restrict Second Amendment rights only through regulations consistent with the historical tradition of firearm regulation. New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 17 (2022). Domestic violence restraining order-based firearm restrictions must be grounded in a finding of actual dangerousness or threat. United States v. Rahimi, 602 U.S. 680, 701-02 (2024).

80. 18 U.S.C. § 922(g)(8) prohibits firearm possession by persons subject to qualifying domestic violence restraining orders. A qualifying order under § 922(g)(8) must be issued after a hearing of which the defendant received actual notice and at which the defendant had an opportunity to participate.

81. As applied to Plaintiff, enforcement of 18 U.S.C. § 922(g)(8) violates the Second Amendment as incorporated through the Fourteenth Amendment. Section 922(g)(8) applies only where the predicate order was issued after the restrained person received notice and had an opportunity to participate, and where additional statutory predicates are satisfied. Plaintiff alleges the April 2021 DVRO was entered by default without constitutionally adequate notice and without a meaningful opportunity to be heard, and without any reliable adjudication that Plaintiff posed a credible threat to the physical safety of an intimate partner or child. Under *United States v. Rahimi*, 144 S. Ct. 1889 (2024); *see also* United States v. Perez-Gallan, No. 22-51019 (5th Cir. 2023), the constitutionality of disarmament restrictions depends on historically grounded justifications tied to dangerousness and to procedurally reliable protective-order mechanisms. On Plaintiff's allegations — where the predicate record rests on a non-violent administrative dispute rather than "abuse" within the meaning of Family Code § 6203, and where Plaintiff was deprived of meaningful process — continued deprivation via CLETS and NICS is unconstitutional as applied. Plaintiff further alleges that the absence of any reliable dangerousness determination is consistent with Plaintiff's continued eligibility for, and adjudication of, an active Top Secret security

clearance, which considered restraining-order history among other factors under SF-86 Guideline J. *See* Exhibit B; Exhibit C.

83. Defendants Rios and Martinez, through the conduct described in this complaint, procured and perpetuated the CLETS entry that forms the basis for Plaintiff's ongoing Second Amendment deprivation.

84. As applied to Plaintiff, enforcement of the § 922(g)(8) prohibition based on the April 2021 DVRO violates the Second Amendment as incorporated through the Fourteenth Amendment. The proof of service purporting to complete the court-authorized alternate service under DV-117 was filed on February 17, 2021 — after the March 5, 2021 hearing date at which the DVRO was issued. *See* Exhibit C (DV-117 proof of service, filed February 17, 2021). No completed service was on file at the time of the hearing. Plaintiff had not received notice of the hearing before it occurred. Neither had Plaintiff's attorney of record, Donald Schwartz, who was not served with notice of the DVRO application or the March 5, 2021 hearing by any means. The absence of notice to both the restrained party and his attorney of record confirms that the April 2021 DVRO was not issued after a hearing of which the defendant received actual notice and at which he had an opportunity to participate — the specific statutory predicate required by 18 U.S.C. § 922(g)(8) for a qualifying restraining order to trigger a federal firearms prohibition. Because the predicate order was not issued after constitutionally and statutorily adequate notice, and was not based on any finding of actual dangerousness, the ongoing enforcement of § 922(g)(8) against Plaintiff is unconstitutional as applied. *United States v. Rahimi*, 602 U.S. 680, 701-02 (2024); United States v. Perez-Gallan, No. 22-51019 (5th Cir. 2023).

85. The ongoing maintenance of the CLETS entry by the Santa Cruz County Sheriff's Department, without a procedure to review records subject to documented legal challenge, constitutes a Monell policy or practice that causes the ongoing Second Amendment deprivation described herein. Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978).

86. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: (a) ongoing deprivation of his Second Amendment rights from April 2021 to the present; (b) the forced transfer under duress in October 2024 of five legally owned firearms — a Glock .40 caliber handgun, two shotguns, and two WWII collector rifles — including loss of the fair market value of each firearm transferred; (c) the warrantless entry into Plaintiff's home on October 21, 2024 and the violation of his right to be secure in his person and property; (d) ongoing risk of adverse adjudication or revocation of Plaintiff's active federal Top Secret security clearance due to the continued presence of the void DVRO in CLETS and NICS databases, threatening the professional livelihood dependent upon that clearance; (e) severe emotional distress and loss of sense of security in his home; and (f) other damages in amounts to be proven at trial. *See* Exhibit A (video recording); Exhibit Q (federal security clearance documentation, lodged under seal).

COUNT FOUR: 42 U.S.C. § 1983 — FOURTH AMENDMENT

(Against Defendant County of Santa Cruz and Sheriff Christopher Clark, official capacity, as moving-force defendants; Does 1-10 included as factual predicate only )

87. Plaintiff realleges all preceding paragraphs.

88. The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects the right of persons to be secure in their homes against unreasonable searches and seizures. The home is 'first among equals' in Fourth Amendment protections. Florida v. Jardines, 569 U.S. 1, 6 (2013). Warrantless entry into a home is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980).

89. Consent to entry must be freely and voluntarily given, not the product of duress or coercion, express or implied. Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). The voluntariness of consent is determined by the totality of the circumstances.

90. On October 21, 2024, four Department of Justice agents from the DOJ Fresno office arrived at Plaintiff's residence without a warrant. The agents confirmed that their visit was predicated on the April 2021 DVRO and the associated CLETS and NICS database entries — the product of Defendants Rios and Martinez's coordinated conduct described in ¶¶45-51 above. The specific firearm the agents sought was a Glock .40 caliber handgun registered to Plaintiff. No warrant had been issued. No judicial order authorized the visit or any demand arising from it.

91. Plaintiff permitted the agents to enter his home under the following coercive circumstances: (a) four armed federal agents were at his door without a warrant; (b) the agents explicitly threatened that if Plaintiff did not allow them entry, they would arrest him, seize his home, and seize his firearms; and (c) the agents threatened to go obtain a warrant from "Judge Volkmann." At the time of this threat, Judge Timothy Volkmann had retired from the Santa Cruz County Superior Court on March 29, 2024 — six months before the raid. He was not a sitting judge, had no judicial office, and had no authority to issue any warrant of any kind. The agents' threat to obtain a warrant from a retired state court judge with no warrant-issuing authority was a false claim of legal authority. Under Bumper v. North Carolina, 391 U.S. 543, 548-50 (1968), consent obtained through a false claim of legal authority is constitutionally invalid — "there can be no consent under such circumstances." Under the totality of these circumstances — armed federal agents, explicit threats of arrest and property seizure, and a false assertion of authority to obtain a warrant from a retired judge — Plaintiff's permission to enter was not freely and voluntarily given within the meaning of Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). The entry was warrantless and without valid consent, in violation of the Fourth Amendment. *See* Exhibit A (video recording of agent arrival and approach).

92. The entry into Plaintiff's home was therefore warrantless and without valid consent, in violation of the Fourth Amendment.

93. The Glock .40 caliber handgun the agents sought was not present on the premises. No firearms were found. Plaintiff was not in possession of any prohibited firearm on October 21, 2024.  94. Despite finding no firearm, the agents issued Plaintiff an extra-judicial demand that he had ten days to transfer the Glock out of his name, under implicit threat of federal prosecution based on the void DVRO. This demand was issued without any judicial order, without any warrant, and without any lawful authority arising from a valid restraining order.  95. The October 21, 2024 warrantless entry and ten-day demand were the direct and proximate result of Defendant Santa Cruz County Sheriff's Department's maintenance of the CLETS entry for the April 2021 DVRO, which the Sheriff's Department knew or should have known was subject to documented legal challenge in Case No. 18FL00642. The CLETS entry was the operative basis for the DOJ Fresno office's dispatch of agents to Plaintiff's home. The Sheriff's Department's maintenance of that record without constitutionally adequate procedures for reviewing challenged entries was the moving force behind the constitutional deprivation described herein.

94. Plaintiff is in possession of video recording of the agents arriving at his residence on October 21, 2024. Plaintiff will seek to authenticate and introduce this recording in this proceeding. Plaintiff has filed or will file FOIA requests with DOJ, ATF, and FBI Fresno for all four agents' body camera footage. The identities of two agents who refused to identify themselves will be ascertained through those FOIA requests and through discovery. Plaintiff will amend this complaint as necessary to add claims or parties upon receipt of those materials.  A Fourth Amendment "seizure" occurs when there is "some meaningful interference with an individual's possessory interests" in property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Plaintiff alleges that the agents' extra-judicial ten-day demand — backed by the coercive threat of federal felony prosecution if Plaintiff did not transfer his legally owned Glock — constituted a constructive seizure because it meaningfully interfered with Plaintiff's possessory interests. Plaintiff alleges this interference was executed without a warrant, without a judicial surrender order, and in reliance on an invalid or constitutionally defective restraining-order record and associated CLETS entry, in violation of the Fourth Amendment.  *See* Exhibit A

95. Does 1-10 are included in this Count solely as factual predicate for the constitutional injury caused by County Defendants' maintenance of the CLETS record; no Bivens damages claim is asserted against them.

96. As a direct and proximate result of the above-described conduct, Plaintiff has suffered: (a) violation of his constitutional right to be secure in his home arising from the initial unconsented entry by three agents across Plaintiff's threshold without a warrant; (b) violation of his constitutional right to be secure in his home arising from the subsequent entry obtained through coercive threats and a false assertion of legal authority; (c) the constructive seizure without warrant or judicial process of five legally owned firearms — a Glock .40 caliber handgun, two shotguns, and two WWII collector rifles — transferred under duress pursuant to the agents' extra-judicial ten-day demand, including loss of the fair market value of each firearm; (d) the ongoing constitutional injury arising from the extra-judicial ten-day demand, which deprived Plaintiff of

legally owned property — including four firearms for which no demand was issued and no legal authority existed — without any warrant, judicial order, or lawful process; (e) ongoing risk of adverse adjudication or revocation of Plaintiff's active federal Top Secret security clearance due to the continued presence of the void DVRO in CLETS and NICS databases, threatening the professional livelihood dependent upon that clearance; (f) severe emotional distress and loss of sense of security in his home; and (g) other damages in amounts to be proven at trial.

---

**COUNT FIVE: 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION**

**(Against Defendants Rios and Martinez)**

96. Plaintiff realleges all preceding paragraphs.

97. The First Amendment protects the right to petition the government for redress of grievances, including through the courts. BE&K Construction Co. v. NLRB, 536 U.S. 516, 524 (2002). Filing a lawsuit is a constitutionally protected exercise of First Amendment petition rights.

98. On August 14, 2020, Plaintiff filed a defamation action against Rios in Santa Clara County Superior Court (Case No. 20CV369516). This lawsuit was an exercise of Plaintiff's First Amendment right to petition the courts for redress.

99. Following the March 21, 2025 judgment in Case No. 20CV369516, and before Plaintiff filed his notice of appeal, Martinez filed a $1.15 million malicious prosecution action against Plaintiff and Donald Schwartz on April 4, 2025 in Santa Cruz County Superior Court — Case No. 25CV01051. Martinez filed in Santa Cruz County rather than Santa Clara County, where the underlying defamation case had been litigated for nearly five years, in a deliberate effort to avoid judges familiar with the underlying fraud. The case was initially assigned to Judge Schmal and was subsequently transferred last minute to Judge Connolly. Judge Connolly had a specific, documented prior grievance against Plaintiff arising from two independent acts by Plaintiff that directly affected proceedings over which Judge Connolly was presiding. First, during the trial and public protests surrounding the high-profile case involving minor children publicly known as Maya and Sebastian — proceedings over which Judge Connolly was presiding — Plaintiff was instrumental in securing camera access to the courthouse during that time period, bringing public and press scrutiny to those proceedings in a manner that Judge Connolly opposed. Second, approximately one year later, Plaintiff publicly advocated for California Senate Bill 331 — legislation that arose from the public attention generated by the Maya and Sebastian case and was directed at preventing the trafficking of children through the use of transporters. Plaintiff's advocacy contributed to the passage of SB 331, legislation that Judge Connolly was aware arose directly from the case she had presided over and from the public scrutiny that Plaintiff had helped bring to those proceedings. Judge Connolly was aware that Plaintiff was responsible for both of these acts — the courthouse camera access during the Maya and Sebastian trial and the subsequent

SB 331 advocacy — each of which affected proceedings she had presided over and each of which she opposed or found objectionable. The assignment of Case No. 25CV01051 to a judge with two specific documented prior grievances against the defendant in that case, and any adverse rulings subsequently issued in those proceedings, raise substantial due process concerns regarding judicial impartiality that satisfy the constitutional threshold established in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). This filing was fourteen days after the judgment in Case No. 20CV369516, during the period when Plaintiff's right to appeal had vested but before the notice of appeal was filed. Plaintiff requests that the Court take judicial notice of Case No. 25CV01051, Santa Cruz County Superior Court, pursuant to Federal Rule of Evidence 201.

100. On information and belief, the filing of Case No. 25CV01051 was motivated, at least in part, by a purpose to retaliate against Plaintiff for exercising his First Amendment petition rights in Case No. 20CV369516, and to deter Plaintiff from continuing to exercise those rights. The retaliatory intent behind the filing was not formed in reaction to the March 21, 2025 judgment — it was expressed repeatedly in advance of that judgment. During the course of the defamation proceedings in Case No. 20CV369516, Defendant Martinez made statements to both Plaintiff and Plaintiff's then-counsel Donald Schwartz threatening that a malicious prosecution action would be filed against Plaintiff if the defamation case proceeded. These pre-filing threats, made to both the plaintiff and his attorney of record during active litigation, are direct evidence that the April 4, 2025 filing of Case No. 25CV01051 was a premeditated act of retaliation for Plaintiff's exercise of his First Amendment petition rights — not a good-faith legal claim that arose from the judgment.

101. The filing of the malicious prosecution action while the underlying appeal was pending was premature and without legal basis under Jarrow Formulas, Inc. v. LaMarche, 31 Cal.4th 728 (2003). A lawsuit filed without legal basis, motivated by retaliatory intent, violates the First Amendment.

102. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered: (a) the burden of defending a baseless lawsuit; (b) default entered against him on August 11, 2025; (c) $7,007 in discovery sanctions; and (d) other damages in amounts to be proven at trial.

---

**COUNT SIX: DECLARATORY RELIEF — 28 U.S.C. § 2201**

**(Against All Defendants)**

103. Plaintiff realleges all preceding paragraphs.

104. An actual and justiciable controversy exists between Plaintiff and Defendants concerning whether the enforcement of the April 2021 DVRO against Plaintiff violates his rights under the Fourteenth and Second Amendments to the United States Constitution.

105. Plaintiff seeks a declaration that: (a) the enforcement of the April 2021 DVRO against Plaintiff violates his rights under the Fourteenth Amendment's Due Process Clause; (b) the enforcement of the April 2021 DVRO against Plaintiff violates his rights under the Second Amendment as incorporated through the Fourteenth Amendment; (c) the maintenance of the CLETS entry arising from the April 2021 DVRO, without notice and an opportunity to be heard regarding the entry's constitutional validity, violates Plaintiff's constitutional rights. *See* Exhibit B; Exhibit O; Exhibit P.

106. Declaratory relief is appropriate because: (a) the Defendants continue to enforce the DVRO and maintain the CLETS entry; (b) a renewal application is currently pending that seeks to make the DVRO permanent; and (c) the declaration sought would resolve the controversy between the parties and guide future conduct.

**107. Notice Regarding Exhibits and Amendment.** Plaintiff proceeds on the factual allegations set forth herein, which are sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), without attached exhibits. The documentary evidence supporting each allegation — including the April 2021 DVRO and associated service documents, the Martinez gun-inquiry filings, Plaintiff's video recording of the October 21, 2024 DOJ agent arrival, the Martinez State Bar suspension records, the $536,000 assignment order, the California Supreme Court denial orders, Plaintiff's England reservation filing, and Plaintiff's federal security clearance documentation — is in Plaintiff's possession, has been organized and indexed, and is available for production upon the Court's direction or in connection with any motion or proceeding in this action. Plaintiff expressly reserves his right under Federal Rule of Civil Procedure 15(a)(1)(B) to file a First Amended Complaint as a matter of course within 21 days of the first responsive pleading filed by any Defendant. Plaintiff intends to incorporate documentary exhibits, any additional facts developed through FOIA responses, and any supplemental allegations regarding the April 14, 2026 DVRO renewal hearing into the First Amended Complaint. Plaintiff respectfully requests that the Court's scheduling orders account for this anticipated amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark Esquibel respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

1. DECLARATORY RELIEF: A declaration under 28 U.S.C. § 2201 that: (a) Defendants Rios and Martinez procured the April 2021 DVRO through extrinsic fraud and judicial deception,

violating Plaintiff's Fourteenth Amendment rights; (b) the ongoing enforcement of a DVRO predicated exclusively on a non-violent administrative dispute, against an individual holding an active federal security clearance, fails the constitutional requirement of dangerousness under the Second Amendment as applied to Plaintiff, pursuant to *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and United States v. Perez-Gallan, No. 22-51019 (5th Cir. 2023); and (c) the resulting CLETS and NICS entries are therefore unconstitutional as applied to Plaintiff. *See* Exhibit Q

2.  INJUNCTIVE RELIEF: A preliminary and permanent injunction: (a) prohibiting Defendants Santa Cruz County Sheriff's Department from maintaining or disseminating the CLETS entry for the April 2021 DVRO without providing Plaintiff constitutionally adequate notice and an opportunity to be heard regarding its continued validity; *See* Exhibit B; Exhibit C. (b) prohibiting Defendant Hansen, in her official capacity, from conditioning Plaintiff's parental contact or parental rights on compliance with the April 2021 DVRO or any renewal predicated on the same defective service and extrinsic fraud alleged herein, absent constitutionally adequate notice and a meaningful opportunity to be heard on the merits; and prohibiting the responsible executive and recordkeeping Defendants, in their official capacities, from using, maintaining, disseminating, or enforcing any CLETS or NICS firearms-disability entry against Plaintiff predicated on the April 2021 DVRO unless and until Plaintiff has been afforded constitutionally adequate process;

**3. DATABASE CORRECTION:** Pursuant to 18 U.S.C. § 925A, 34 U.S.C. § 40901(f), and this Court's authority under 28 U.S.C. §§ 2201-2202, an order requiring County Defendants to take all steps within their authority to correct, update, flag, or cancel Plaintiff's CLETS restraining-order record, including transmitting any required correction or cancellation notices through established state and federal channels, so as to remove or correct the NCIC Protection Order File entry and associated records used in federal firearms background checks, including the NICS database entry that has subjected Plaintiff to an ongoing federal firearms prohibition based on the void April 2021 DVRO.

**3A. EXPANDED DATABASE AND RECORD CORRECTION:** Pursuant to 28 U.S.C. § 2202 and this Court's inherent equitable authority to grant further necessary and proper relief based upon a declaratory judgment, an order requiring all Defendants, and any state or federal agency acting in concert with them, to take all steps within their authority to: (a) correct, cancel, or annotate any local, state, or federal law enforcement database record — including but not limited to CLETS, NCIC, NICS, and any county or state criminal history database — that reflects the April 2021 DVRO as a valid or subsisting finding of domestic violence or dangerousness, to reflect the adjudication in this Court; (b) transmit correction, cancellation, or annotation notices through all established state and federal channels to ensure that the corrected record is reflected in all downstream database systems that received or relied upon the original CLETS entry; and (c)

provide Plaintiff with written confirmation of all corrections, cancellations, and transmissions made pursuant to this order, within 30 days of the order's issuance, so that Plaintiff may present such confirmation to any employer, licensing authority, security clearance adjudicator, or background check system that has received or relied upon the void DVRO record. The written confirmation described in subparagraph (c) shall specifically address the correction of any record transmitted to the Department of Defense, Department of Energy, or any other federal agency that conducts security clearance adjudications under the National Security Adjudicative Guidelines, including any record maintained under SF-86 Guideline J (Criminal Conduct), so that Plaintiff's active federal Top Secret security clearance is not adversely affected during any periodic reinvestigation by the continued presence of the void DVRO in any law enforcement or background check database. *See* Executive Order 14206 (Feb. 6, 2025); Attorney General Bondi Second Amendment Enforcement Task Force Memorandum (Apr. 8, 2025).

**3B. CORRECTIVE PUBLIC STATEMENT:** Pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201-2202, California Civil Code §§ 48a and 3294, and this Court's inherent equitable authority to fashion complete relief for fraud on a judicial proceeding and constitutional violations that monetary damages alone cannot remedy — *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977); *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15 (1971); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014) — an order requiring Defendants Rios and Martinez, jointly and severally, to publish and disseminate — at their expense — a corrective public statement in the following forms and venues: (a) a written notice published in the Santa Cruz Sentinel and the Los Angeles Times, in a display advertisement of no less than one-quarter page in size, placed in the news section of each publication — not in a classified, legal notice, or other non-editorial section — on a date certain to be set by the Court; (b) a written notice filed in Santa Cruz County Superior Court Case No. 18FL00642 and in each other state court proceeding in which the false allegations described in this Complaint were filed or relied upon; (c) written notice transmitted to any school, medical provider, child protective services office, child support enforcement agency, law enforcement agency, or other institution to which Defendants or their agents communicated the false allegations described in this Complaint, including any family court or child support enforcement agency that has processed or enforced child support obligations under the fictitious "Watson" surname in defiance of the court orders described in ¶31 of this Complaint;

*"A federal court has determined that a domestic violence restraining order obtained against Mark Esquibel in April 2021 was procured through fraud, without proper service of process, and based on conduct that does not constitute domestic violence under California law. The United States District Court for the Northern District of California has declared that every law enforcement and child protective services investigation of allegations against Mr. Esquibel over a period exceeding*

*twenty years found those allegations to be unfounded or baseless, and that enforcement of the April 2021 restraining order violated Mr. Esquibel's constitutional rights under the Fourteenth and Second Amendments to the United States Constitution. This statement is published pursuant to the order of the United States District Court for the Northern District of California."*

Plaintiff Mark Esquibel has previously been a candidate for public office in Santa Cruz County and intends to seek public office again in the future. His public and professional reputation — including his standing with his daughter's schools, medical providers, and community institutions — has been materially and irreparably harmed by the false allegations described herein and their widespread dissemination by Defendants across multiple venues over more than a decade. That reputational harm extends into the public and civic sphere in which Plaintiff has previously participated as a candidate and in which he intends to participate again. Monetary damages alone are inadequate to remedy this harm. The corrective publication described herein is the minimum equitable relief necessary to remedy the reputational harm caused by Defendants' fraudulent conduct in the communities where that harm occurred, and to restore Plaintiff to the public standing he enjoyed before Defendants' sustained campaign of false allegations. *Smith v. Wade*, 461 U.S. 30, 56 (1983); California Civil Code § 48a; *Restatement (Second) of Torts* § 623 (person who has made a defamatory statement may be required in equity to publish a retraction as part of complete relief).

4. COMPENSATORY DAMAGES: In an amount to be proven at trial, for: (a) loss of Plaintiff's fundamental parental relationship with his minor daughter Skylar Esquibel for over five years, including damages for loss of familial association, disruption of the parent-child relationship, and resulting emotional distress and non-economic harm, consistent with the fundamental liberty interest recognized in *Troxel v. Granville*, 530 U.S. 57 (2000); (b) deprivation of Second Amendment rights from April 2021 to the present, including the stigmatic and practical consequences of the ongoing CLETS and NICS entries; (c) the forced constructive seizure and transfer under duress of five legally owned firearms — a Glock .40 caliber handgun, two shotguns, and two WWII collector rifles — in October 2024, including the fair market value of each firearm transferred, with the transfer of the four firearms for which no demand was issued and no legal authority existed constituting an independent basis for damages; *See* Exhibit A (Plaintiff's video recording); (d) the warrantless entry into Plaintiff's home on October 21, 2024, including violation of Plaintiff's constitutional right to be secure in his home and the dignitary harm arising from that violation; (e) First Amendment retaliation through the filing of Case No. 25CV01051 (Santa Cruz County Superior Court), including the burden of defending a baseless lawsuit, the default entered against Plaintiff on August 11, 2025, and the $7,007 in discovery sanctions imposed in those proceedings; (f) ongoing risk of adverse adjudication or revocation of Plaintiff's active federal Top Secret security clearance due to the continued presence of the void DVRO in CLETS and NICS

databases, and all economic damages arising from any adverse clearance action including loss of professional livelihood; (g) severe emotional distress, anxiety, and psychological harm arising from over five years of separation from Plaintiff's daughter, the October 21, 2024 enforcement action, and the ongoing constitutional deprivations described herein; and and (h) all other compensatory damages in amounts to be proven at trial; (i) the forced sale of Plaintiff's home under financial duress caused by five-plus years of sustained litigation abuse by Defendants, including the difference between the distressed sale price and the fair market value of the property at the time of sale, relocation costs, and all consequential economic damages arising from the loss of Plaintiff's primary residence; and (j) ongoing child support payments made under the fictitious "Watson" surname that Rios has refused to correct in defiance of three successive court orders, all economic damages arising from Plaintiff's continued financial obligations to a child he has been unconstitutionally prevented from having any contact with for over five years, and the specific misappropriation of a child support payment of approximately $1,700 that was designated by Plaintiff for a separate child support obligation but was intercepted by the child support enforcement agency and applied without authorization to the fraudulent Watson account — which misapplication the agency refused to correct after being specifically notified, constituting an independent economic injury and an additional instance of county agency conduct perpetuating the fraud enabled by the void DVRO.

**5. PUNITIVE DAMAGES:** Against Defendants Rios and Martinez, jointly and severally, in an amount sufficient to punish and deter the willful, fraudulent, and malicious conduct described herein. Punitive damages are warranted against both Defendants for the following reasons:

Defendant Rios has pursued a sustained, multi-jurisdictional litigation campaign against Plaintiff spanning more than a decade — filing false police reports, false CPS allegations, and fraudulent court filings across multiple California counties — every one of which was investigated and found baseless. Rios has represented to government authorities that she is disabled and unable to work, yet has simultaneously funded three successive attorneys across multiple cases and jurisdictions over more than eleven years of unrelenting litigation. The source of Rios's litigation funding — undisclosed to Plaintiff and unknown to this Court — is itself a subject of discovery. What is known is that Rios's declared financial circumstances are irreconcilable with her demonstrated ability to sustain a decade-plus litigation campaign against Plaintiff. The direct and foreseeable consequences of Rios's sustained misconduct include Plaintiff's complete separation from his daughter for over five years, the forced sale of Plaintiff's home under financial duress caused by litigation costs and the ongoing constitutional deprivations described herein, the warrantless entry of federal agents into Plaintiff's home, the forced transfer of five legally owned firearms, and the ongoing risk to Plaintiff's federal security clearance and professional livelihood. This conduct was undertaken with malice, fraud, and oppression within the meaning of California Civil Code § 3294 and with reckless or callous indifference to Plaintiff's federally protected rights within the meaning of *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Defendant Martinez has deliberately weaponized a void court order to generate litigation revenue under financial desperation — carrying a $536,000 assignment order with 10% compounding interest, having undergone two State Bar mental health diversions to retain his license, and having practiced law during two separate periods of suspension in 2024. Martinez escalated from state court filings to coordinated federal law enforcement action against Plaintiff three days before trial, filed a $1.15 million retaliatory malicious prosecution action during the appellate period, and is now seeking to make the constitutional deprivations permanent through a renewal application for a DVRO he knows was procured through fraud. The direct and foreseeable consequences of Martinez's conduct include all of the harms described above — including Plaintiff's forced sale of his home — which Martinez caused or substantially contributed to through years of financially motivated litigation abuse against a pro se opponent. This conduct was undertaken knowingly, willfully, and with reckless indifference to Plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Rios has simultaneously defied three successive court orders directing her to change Skylar's legal surname from the fictitious "Watson" to "Esquibel" while continuing to collect court-ordered child support from Plaintiff under that same fictitious name — exploiting the judicial process to extract financial benefits from Plaintiff while refusing to comply with the judicial orders that would recognize Plaintiff's legal relationship with his own daughter. Additionally, Rios has exploited the fraudulent Watson account to intercept and benefit from a child support payment of approximately $1,700 that was specifically designated by Plaintiff for a separate child support obligation — a misapplication that a child support enforcement agency applied to the Watson account without Plaintiff's authorization and refused to correct, raising serious questions under California Penal Code § 487 that further demonstrate the willful and malicious nature of Rios's sustained fraud.

6.  COSTS: Costs of suit pursuant to 28 U.S.C. § 1920.

7. MONETARY RELIEF FOR CONSTRUCTIVE SEIZURE: An award of damages in an amount equal to the fair market value of all five legally owned firearms that Plaintiff was forced to transfer under duress — specifically, a Glock .40 caliber handgun, two shotguns, and two WWII collector rifles. Plaintiff alleges that the October 21, 2024 extra-judicial ten-day demand — backed by the explicit threat of federal felony prosecution based on the void DVRO — constituted meaningful interference with Plaintiff's possessory interests in all five firearms within the meaning of *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and thus an unconstitutional warrantless constructive seizure of each firearm transferred. The constructive seizure of the Glock .40 caliber handgun was carried out under an extra-judicial demand referencing that specific firearm. The constructive seizure of the two shotguns and two WWII collector rifles was carried out under no demand whatsoever — the agents made no reference to those four firearms, issued no legal authority for their transfer, and had no lawful basis for requiring their disposition.

The transfer of all four additional firearms was nonetheless a direct and foreseeable consequence of the coercive atmosphere generated by the agents' conduct, including their explicit threats of arrest and property seizure. Plaintiff seeks damages equal to the fair market value of each of the five firearms at the time of transfer, together with any consequential damages arising from the loss of those firearms, in amounts to be established at trial.

8. Such other and further relief as the Court deems just and proper.

**9. PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

---

Dated: MARCH 30, 2026

Respectfully submitted,

Mark Esquibel

MARK ESQUIBEL

Plaintiff, Pro Se
4768 Soquel Drive #12
Soquel, CA 95073

---

**VERIFICATION**

I, Mark Esquibel, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on MARCH 30, 2026, at Soquel, California.

Mark Esquibel

MARK ESQUIBEL